IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| TERRENCE LONG and<br>BARRY BARR,<br><br>Plaintiffs,<br><br>vs.<br><br>ARONOV REALTY MANAGEMENT,<br>INC., AMY CLARK<br>KNUDSEN, and MEIYING FORNEY,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     CIVIL ACTION NO.:<br>~~CV-07-~~ 2:07cv881-WKW<br><br>JURY DEMAND |

# COMPLAINT

## I. JURISDICTION

1. This is an action for legal and equitable relief to redress discrimination in housing and employment on the basis of race. This action arises under the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982; and Alabama state law.

2. The Court has jurisdiction of the subject of this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), 2201, & 2202. Jurisdiction over plaintiffs' claims based on Alabama law exist under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367.

## II. PARTIES

3. Plaintiff, Terrence Long (hereinafter referred to as "Long"), is an African-American citizen of the United States of America and is over the age of nineteen years. Plaintiff resides in Montgomery, Alabama, which is in this judicial district and division.

4. Plaintiff, Barry Barr (hereinafter referred to as "Barr"), is a Caucasian citizen of the United States of America and is over the age of nineteen years. Barr resides in Montgomery, Alabama, which is in this judicial district and division.

5. Defendant, Aronov Realty Management, Inc., is a residential and commercial real estate company based in Montgomery, Alabama, and does business in this judicial district and division.

6. Defendant, Amy Clark Knudsen (hereinafter referred to as "Knudson"), is a residential and commercial real estate agent who is based in Montgomery, Alabama, and who does business in this judicial district and division. Knudsen is employed by defendant Aronov as a Leasing and Sales Specialist in the Commercial Division. At all times relevant to this Complaint, Knudsen was acting in the line and scope of her employment with Aronov and as leasing agent for the property owned by defendant Meiying Forney.

7. Defendant, Meiying Forney (hereinafter referred to as "Forney"), is an individual who is believed to be a resident of California. Forney is the owner of the

property known as the "Lecroy Shopping Village" located at 3600 Debby Drive in Montgomery, Alabama and does business in this judicial district and division.

### III. FACTUAL ALLEGATIONS

8. Plaintiff Long, is an African-American male and is a former major league baseball player.

9. Plaintiff Barr, is a Caucasian male and is the former owner of the Celebrations nightclub in Montgomery. Celebrations clientele was predominantly African-American.

10. In April 2007, Long approached Barr concerning his interest in opening a sports bar in Montgomery, Alabama, that would cater primarily to the African-American community. Long asked Barr to be his partner in this venture and to work on finding a location for the business.

11. In May 2007, Barr learned that the Pure Country nightclub had closed business and that its location, in the Lecroy Shopping village, was for lease.

12. In May 2007, Barr set up a meeting with defendant Knudsen, a Leasing and Sales Specialist with Aronov and the leasing agent for Lecroy Shopping Village's Pure Country location. On or about May 10, 2007, Barr and Knudsen met at the Lecroy Shopping Village at 3600 Debby Drive to view the former Pure Country location. The Lecroy Shopping Village is owned by Meiying Forney.

13. During their meeting, Knudsen was very concerned with the type of business that Barr was attempting to place in the shopping center. Barr told Knudsen that Long wanted to put a sports bar in the location and told her that they had looked at other properties in Montgomery.

14. Knudsen brought up the fact that they had great tenants at Lecroy and had no problems. She also stated that they did not want the same type of problems that existed at the Celebrations nightclub.

15. Knudsen repeatedly emphasized the fact that another "Celebrations" type nightclub was not wanted at the Lecroy Shopping Village and stated that they did not want a black club at that location because of problems in the parking lot.

16. Barr then told Knudsen that he was the former owner of Celebrations. Knudsen appeared shocked and uncomfortable upon hearing this information.

17. The Pure Country property was not in good shape when Barr viewed it, and Knudsen informed him that the owner was unwilling to put any money into the building, so all improvements would have to be made by the tenants.

18. At the close of that meeting Barr told Knudsen that they would probably make an offer on the Friday's building.

19. The offer on the Friday's building was turned down. The asking price was $550,000.00.

4

20. Barr discovered that the Lecroy Shopping Village was for sale and approached Knudsen with a one million dollar offer to purchase the shopping center. This offered was turned down with no counteroffer.

21. In the first week of June 2007, Barr called Knudsen and informed her that he and Long were still interested in the Pure Country location and that they wanted to do something immediately. Barr asked Knudsen if Long could look at the inside of the property.

22. Knudsen stated that she could not let them inside the property because it was tied up in a bankruptcy.

23. Barr then asked Knudsen if they would write a lease for the asking amount. Knudsen replied that there was already a lease pending and that they were in the process of working out the details on that lease. Knudsen would not even write a back up lease for the property.

24. The week after Barr's conversation with Knudsen, Mark Cranage (hereinafter referred to as "Cranage"), the owner of the Woodmere Tavern in Montgomery, contacted Knudsen and set up a time to inspect the Pure Country location. Cranage, who had previously owned a country-western bar similar to Pure Country, told Knudsen who he was. Knudsen stated that she had been in Cranage's previous club and the Woodmere Tavern and was familiar with the format used at both

clubs.

25. Knudsen told Cranage that she wanted him to see the property as soon as possible and that she would arrange it through the attorney who was handling the bankruptcy. Cranage inquired if there was anyone else looking at the property and Knudsen responded that other people were looking at the property, but they were not the kind of people they wanted in that location. Knudsen told Cranage that he was exactly what they wanted and they needed to move on it as quickly as possible. Knudsen repeatedly told Cranage that she would move him to the front of the list because he was the type they wanted at this location.

26. Upon Knudsen's request, Cranage then called the bankruptcy attorney, Don Little, and set up a time to view the Pure Country location. Little represents the owner of the Lecroy Shopping Village, Meiying Forney. On June 13th, Cranage met with Little and toured the Pure Country location.

27. Several times during this tour, Little made comments about the type of tenant that was wanted in the location. Little also stated that there was another party interested in the property, even after they had inflated the price to discourage interest. Cranage was promised a lease by the next Monday.

28. The day after Cranage toured with Little, Barr contacted Knudsen and once again asked if they could tour the building. She stated that we could not. Barr also

asked about a back up lease in case the lease that they had been previously working on fell through and was told that he could not.

29. To date, Barr and Long have not been allowed to lease or purchase any property affiliated with the Lecroy Shopping Village at 3600 Debby Drive in Montgomery.

### IV. COUNT ONE - 42 U.S.C. § 1981

30. Plaintiffs adopt and re-allege paragraphs 1-29, as if fully set forth herein.

31. At all times referenced above, defendant Knudsen was acting within the line and scope of her duties as an agent of the defendants Aronov Realty and Forney.

32. At all times reference above, Little was acting within the line and scope of his duties as an agent of the defendant Forney.

33. The failure to lease or sale the property as described above was based upon the plaintiff Long's race, the plaintiff Barr's affiliation with Long, and both of the plaintiffs' affiliation with African-Americans.

34. The conduct of the defendants violated the plaintiffs' rights guaranteed by the Civil Rights Act of 1866, 42 U.S.C. § 1981, to make and enforce contracts without regard to race.

### COUNT TWO - SECTION 1982

35. Plaintiffs adopt and re-allege paragraphs 1-29, as if fully set forth herein.

36. At all times referenced above, defendant Knudsen was acting within the line and scope of her duties as an agent of the defendants Aronov Realty and Forney.

37. At all times reference above, Little was acting within the line and scope of his duties as an agent of the defendant Forney.

38. The failure to lease or sale the property as described above was based upon the plaintiff Long's race, the plaintiff Barr's affiliation with Long, and both of the plaintiffs' affiliation with African-Americans.

39. The above-described conduct of the defendant violated Plaintiffs' rights guaranteed by the Civil Rights Act of 1866, 42 U.S.C. § 1982, to purchase, lease and to hold real and personal property without regard to race.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that the Court will grant them the following relief:

A.  Issue a declaratory judgment declaring that the wrongs complained of herein violate the rights of Plaintiffs guaranteed by the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982.

B.  Enter a permanent injunction or other injunctive relief enjoining Defendants and their brokers, agents, assistants, estate, successors, employees, assigns, and those acting in concert or cooperation with them from maintaining or continuing any

customs, policies, patterns, practices, or actions which operate to discriminate on the basis of race or color.

C.  Enter a permanent injunction or other injunctive relief enjoining the defendants to take such other and affirmative steps to insure that all of the provisions of the applicable anti-discrimination laws are and will be complied with and that the effects of past and unlawful discrimination by defendants are eradicated.

D.  Award Plaintiffs compensatory and punitive damages, including pre-judgment interest.

E.  Retain jurisdiction of this action for a sufficient time to ensure full compliance with the remedial decree requested herein.

F.  Award Plaintiffs their costs incurred in this case, together with reasonable attorneys' fees and pre-judgment interest, pursuant to 42 U.S.C. §1 1988 and 3613(c)(2).

G.  Grant such additional and further relief as the court may deem just and equitable under the circumstances.

**PLAINTIFF DEMANDS A TRIAL BY A STRUCK JURY**

Respectfully submitted,

_/s/ C. Michael Quinn_
C. Michael Quinn
Kevin W. Jent
Attorneys for Plaintiffs

**OF COUNSEL:**

**WIGGINS, CHILDS, QUINN & PANTAZIS, LLC**
The Kress Building
301 19th Street North
Birmingham, AL 35203
205/314-0500

**Defendants' Addresses:**

Aronov Realty Management, Inc.
3500 Eastern Blvd.
Montgomery, AL 36116-1781

Amy Clark Knudsen
3500 Eastern Blvd.
Montgomery, AL 36116-1781

Meiying Forney
2233 Paragon Drive
San Jose, CA 95131

10

```
Court Name: U S DISTRICT COURT - AL/M
Division: 2
Receipt Number: 4602000600
Cashier ID: khaynes
Transaction Date: 10/02/2007
Payer Name: WIGGINS CHILDS QUINN PANTAZIS
------------------------------------
CIVIL FILING FEE
 For: WIGGINS CHILDS QUINN PANTAZIS
 Case/Party: D-ALM-2-07-CV-000881-001
 Amount:         $350.00
------------------------------------
CHECK
 Check/Money Order Num: 013259
 Amt Tendered:  $350.00
------------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00

TERRANCE LONG ET AL V. ARONOV
REALTY ET AL

2:07-CV-881-WKW
```