IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TERRENCE LONG and | ) | |
| BARRY BARR, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO.: |
| | ) | 2:07-cv-00881-WKW-WC |
| ARONOV REALTY MANAGEMENT, | ) | |
| INC., AMY CLARK KNUDSEN, and | ) | |
| MEIYING FORNEY, | ) | |
| | ) | |
| **Defendants.** | ) | |

## RENEWED MOTION TO AMEND COMPLAINT TO ADD PARTY

**COME NOW** the plaintiffs in the above-styled matter and move the Court to allow an amendment of the Complaint to add as a defendant, Aronov Realty Brokerage, Inc. As grounds for said motion, Plaintiffs state the following:

1.  This case was originally filed on October 2, 2007. The original defendants were Aronov Realty Management, Amy Clark Knudsen, and Meiying Forney. The original defendants have all filed Answers to the Complaint.

2.  When Plaintiff Barr, first met with Defendant Knudsen to discuss the leasing of the property at issue in this case, he was handed a card which represented to him that Ms. Knudsen worked for Aronov Realty Management, Inc. (See Ex. A - Card of Amy Clark Knudsen produced with Plaintiff's Initial Disclosures).

3.  On June 23, 2008, a deposition was taken of Scott Harris. Harris was acting as the

1

30(b)(6) representative of Aronov Realty Management. Harris is employed as the Senior Vice President of Aronov Realty Brokerage, Inc.. (EX B - Scott Harris Depo p. 5). Harris is also the Senior Vice President of Aronov Realty Management. (Harris Depo p. 46). In addition, Harris serves as the qualifying broker for both Aronov Realty Management and Aronov Realty Brokerage. (Harris Depo p. 7). Owen Aronov, Jake Aronov, Jenny Autrey and Harris are all officers in both Aronov Realty Management and Aronov Realty Brokerage. (Harris Depo p. 21). Even though he was on the Board of both companies and was Senior Vice President of both companies, Harris did not know if the companies in any way commingled their profits, losses or revenues, or whether they stood alone. (Harris Depo p. 50). Both companies also have the same Human Resources Department. (Harris Depo p. 60).

4. In the Defendant Aronov Realty Management, Inc's Conflict Disclosure Statement filed with this Court on October 30, 2007, Aronov Realty Brokerage, Inc. is listed as a wholly owned subsidiary of Aronov Realty Management, Inc. (See Ex. C ).

5. Based on the above, the plaintiffs should be allowed to amend their complaint to include Aronov Realty Brokerage, Inc. as a defendant. Fed. R. Civ. P. 15(a) directs that leave to amend "shall be freely given when justice so requires." *Town of Davie*, 847 F.2d 771, 773 (11th Cir. 1988)(citing *Dussouy v. Gulf Coast Investment Corp.,* 660 F.2d 594, 597 (5th Cir. 1981)).[1] This is a situation where Aronov Realty Brokerage should be added

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(*en banc*), the 11th Circuit adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

as a defendant.

6.   First, the statute of limitations on the § 1981 and § 1982 claims is either 2 or 4 years, depending on the type of claim brought. The actions forming the basis of the plaintiff's Complaint began in April 2007. Therefore, statute of limitations would not bar this action.[2]

7.   Second, Aronov Realty Brokerage would suffer no prejudice if brought in as a defendant at this time. As the testimony cited above makes clear, the two entities (Management and Brokerage) are closely related. Scott Harris acts as Senior Vice President for both organizations and most importantly is the Qualifying Broker for both companies.[3] Aronov Realty Management has filed a pleading stating that Aronov Brokerage is its wholly owned subsidiary. Also, at least four individuals sit on the Board of both companies and the companies share a Human Resources Department. Aronov Realty Brokerage was clearly aware of this suit and given the closeness of the relationship between the two companies, no prejudice or harm would exist because of the amendment.[4]

8.   Finally, the plaintiffs should be allowed to amend to add Aronov Brokerage as a defendant because the evidence shows that when Plaintiff Barr first met with Amy Knudsen he was

---

[2]Plaintiffs could conceivably file a separate action against Aronov Realty Brokerage, Inc.

[3]Under Alabama law a qualifying broker is responsible to the public for the actions of each salesperson and associate broker licensed under him or her and of each company for which he or she is the qualifying broker. Ala. Code § 34-27-34 (a)(2). A broker may serve as a qualifying broker if he or she is actually in a position to supervise the real estate activities of the associate broker or salesperson on a full-time basis. Ala. Code § 34-27-34(a)(1).

[4]Another factor showing the close relationship of the two entities is that Knudsen, although allegedly employed by Aronov Realty Brokerage, shares legal counsel in this matter with Aronov Realty Management.

3

given a card with Ms. Knudsen's name on it, which stated that she was employed with

Aronov Realty Management as a Leasing and Sales Specialist in the Commercial Division.

Based upon this card, the plaintiffs filed suit against Aronov Realty Management, Inc., and

did not initially include Aronov Realty Brokerage as a defendant.

9.    Based upon the above, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, the

Court should allow the plaintiffs to amend their Complaint and add Aronov Realty

Brokerage, Inc., as a defendant.

10.    Pursuant to Local Rule 15.1, the plaintiffs' Proposed Amended Complaint is attached

hereto as Exhibit D.

Respectfully submitted,


/s/ Kevin W. Jent
C. Michael Quinn
Kevin W. Jent
Attorneys for Plaintiffs


**OF COUNSEL:**

**WIGGINS, CHILDS, QUINN & PANTAZIS, LLC**
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
205/314-0500

4

## CERTIFICATE OF SERVICE

I do hereby certify that I have filed the above and foregoing today, June 26, 2008, by CM/ECF, with copies being served on:

Charles A. Stewart, III
Quindal C. Evans
Bradley, Arant, Rose & White, LLP
401 Adams Ave, Suite 780
Montgomery, Alabama 36104

N. Gunter Guy, Jr.
BALL, BALL, MATTHEWS & NOVAK, P.A.
P. O. Box 2148
Montgomery, Alabama 36102-2148

/s/ Kevin W. Jent
OF COUNSEL



**Amy Clark Knudsen**
Leasing & Sales Specialist
Commercial Division

# ARONOV

**Aronov Realty Management, Inc.**
3500 Eastern Boulevard  Montgomery, Alabama 36116-1781
Tel 334-277-1000  Fax 334-272-2279  Mobile 334-549-5005
amy.knudsen@aronov.com

**B**

jun2308a

1

```
1          IN THE UNITED STATES DISTRICT COURT
2          FOR THE MIDDLE DISTRICT OF ALABAMA
3                  NORTHERN DIVISION
4
5     TERRENCE LONG & BARRY BARR,
6              Plaintiffs,
7                              CIVIL ACTION NO:
8     v.                  2:07-CV-00881-WKW-WC
9
10    ARONOV REALTY MANAGEMENT, INC.,
11    AMY CLARK KNUDSEN, & MEIYING
12    FORNEY,
13             Defendants.)
14        S T I P U L A T I O N S
15
16             IT IS STIPULATED AND AGREED
17    by and between the parties through their
18    respective counsel, that the deposition of
19    *******************************************
20             SCOTT HARRIS
21    *******************************************
22    may be taken before Kim Duckett,
23    Commissioner, at 401 Adams Avenue,
```

2

```
1     Montgomery, Alabama, on June 23rd, 2008,
2     beginning at 10:00 A.M.
```

jun2308a
14        401 Adams Avenue, Suite 780

15        Montgomery, Alabama  36104

16

17        BALL, BALL, MATTHEWS & NOVAK

18        BY:  N. Gunter Guy

19     2000 Interstate Park Drive, Suite 204

20        Montgomery, Alabama  36109

21

22     ALSO PRESENT: AMY KNUDSEN, BARRY BARR

23

5

1              SCOTT HARRIS,

2     being first duly sworn, was examined and

3     testified as follows:

4

5     EXAMINATION BY MR. QUINN:

6        Q  State your name for the record?

7        A  Joseph Scott Harris.

8        Q  And where are you employed?

9        A  At Aronov Realty Brokerage, Inc.

10       Q  And what is your position with

11    them?

12       A  Senior vice president.

13       Q  And how long have you held the

14    position of senior vice president?

15       A  Eleven years.

16       Q  Prior to that, what were you doing?

17       A  I was with Aronov as well in

18    another position.

19       Q  How long have you been with Aronov?
                        Page 4

jun2308a

1    -- the profitability and the employees in

2    our commercial division which includes our

3    brokerage division and our office and

4    industrial division.

5         Q   Okay.

6         A   And I'm also the qualifying broker

7    for the company for the Aronov Realty

8    Brokerage, Inc. and Aronov Realty

9    Management, Inc.  And I also -- I am

10   actively involved in leasing and

11   investment sales and commercial sales.

12        Q   So you still do sales even though

13   you also manage?

14        A   Correct.

15        Q   And in your position, do you

16   actually have the responsibility over

17   employees of Aronov?

18        A   Yes.

19        Q   Okay.  What employees do you have

20   responsibility over?

21        A   Employees I have responsibility

22   over -- direct responsibility?

23        Q   Uh-huh.

                                          8

1         A   The individual names?

2         Q   No, no, no, the positions.  The

3    people that you supervise.  I don't need

4    their names, I need to know what their

                    Page 6

jun2308a

8      A   Yes, sir.

9      Q   What else do they do?

10     A   We have an insurance company.

11     Q   Okay.

12     A   And a new homes construction

13  company.

14     Q   Okay.

15     A   And that's all I'm aware of.

16     Q   Okay.   Does Aronov Realty Brokerage

17  company have officers?

18     A   Yes, sir.

19     Q   Are any of those officers the same

20  officers that are officers for Aronov

21  Realty Management, Inc.?

22     A   Yes, sir.

23     Q   Who are they that are the same

                                        21


1   officers?

2      A   I don't know all but Owen Aronov,

3   Jake Aronov, and I'm an officer of both,

4   Jenny Autrey.  And those are the ones that

5   I'm aware of.

6      Q   As far as you know, does Ms.

7   Knudsen have any relationship with both

8   management and brokerage?

9      A   No, sir.

10     Q   So she was with management.   She

11  left management, and she came to

12  brokerage?

                    Page 17

jun2308a

19  was with AT&T.  I think it was AT&T.

20      Q  So she had been with Aronov about

21  five years.  Had all of those years been

22  with the management company?

23      A  Yes, sir, up until '06.

                                        46


 1      Q  Did you have to have a conversation

 2  with her boss at management about this

 3  switch?

 4      A  I was her boss at management.

 5      Q  Okay.  All right.  So while she was

 6  at management -- how were you her boss at

 7  both management and then became her boss

 8  at the brokerage company?

 9      A  Because I'm a senior vice president

10  for the management company and the

11  brokerage company.

12      Q  I got you.  So you actually were

13  her boss while she was with the management

14  company?

15      A  Correct.

16      Q  Did she develop the relationship

17  with Ms. Forney while she was at

18  management?

19      A  I can't remember.

20      Q  Can you remember whether or not --

21      A  I think she -- I can't remember.

22      Q  Can you remember whether or not she

23  was involved in leasing tenants for that

                                        47

jun2308a

10    Q   Did you know Mr. Barr?

11    A   No, sir.

12    Q   You've never met him before?

13    A   Not that I can remember.

14    Q   Brokerage company, as far as you

15 know, had never done anything for him?

16    A   Not to my knowledge, but again, I

17 don't know of all the relationships in the

18 brokerage company.

19    Q   Okay.  Now when Ms. Knudsen made

20 the switch from management to brokerage,

21 did the person -- did the entity writing

22 her check change?

23    A   I think it did.

                              50


1    Q   And did her check then start coming

2 from Aronov brokerage rather than Aronov

3 management?

4    A   It should have, but I haven't seen

5 her check, but it should have.

6    Q   That's what's supposed to happen?

7    A   Yes, sir.

8    Q   Okay.  And those companies, since

9 you're on the board of both, do those

10 companies in any way commingle their

11 profits, losses, revenues, any of that or

12 are they stand alone --

13    A   I don't know.

14    Q   -- on their own?  You're on the

                         Page 41

jun2308a

15    board.  You don't know?

16        A  I don't know.  No, I don't.

17        Q  Do either one of those companies

18    get revenue infused from somewhere else

19    other than what they actually go out and

20    lease or sell?

21        A  Not to my knowledge.

22        Q  Okay.  But basically, am I correct

23    that Ms. Knudsen --

                                    51


1        A  They would receive management fees.

2    When you say lease or sell, management

3    fees, development fees, in addition to

4    income -- in addition to commissions

5    generated from leasing and selling.

6        Q  Okay.  And those would come from

7    the properties that they are managing?

8        A  Correct.

9        Q  At the time of her transition to

10    the brokerage company, was she performing

11    basically the same duties and

12    responsibilities and that was leasing

13    commercial property?

14        MR. STEWART:  Object to form.

15        A  Repeat the question.

16        Q  I'm curious as to how her job

17    changed when she came to the brokerage

18    company.

19        A  Okay.  She would have been more

20    focussed on leasing or selling a larger --

                           Page 42

jun2308a

```
 2    this year?
 3        A   Yes.
 4        Q   When you did, do you remember how
 5    much money you made from the brokerage
 6    company and how much money you made from
 7    the management company?  I don't want you
 8    to tell me how much it is, but were they
 9    separate?
10        A   Yes.
11        Q   They were listed separately on your
12    income tax return?
13        A   Yes, sir.
14        Q   Okay.  And when Ms. Knudsen changed
15    over to the brokerage company, other than
16    her pay, did her benefits remain the same
17    or change in any way?  By that, I mean
18    pension, 401K, insurance, that kind of
19    stuff.
20        A   No, sir.
21        Q   Do you know whether the same entity
22    runs the benefits for both the brokerage
23    employees and the management employees?
```

60

```
 1        MR. STEWART:  Object to form.
 2        A   I don't know.
 3        Q   Does it come out of the same human
 4    resources department or payroll
 5    department?
 6        A   Yes, it comes out of the same human
```

Page 49

jun2308a

7   resource department.

8        Q   Okay.  Thanks.  That's it.  She

9   didn't lose vacation or anything like that

10  when she switched over?

11       A   I don't know that.

12           MR. QUINN:  That's all.

13           MR. STEWART:  Nothing.

14           MR. GUY:  Nothing.

15

16

17           AND FURTHER DEPONENT SAITH NOT.

18

19

20

21

22

23

                                    61


1            C E R T I F I C A T E

2

3   State of Alabama

4   St. Clair County

5

6      I hereby certify that the above and

7   foregoing deposition was taken down by me

8   in stenotype and the questions and answers

9   thereto were transcribed by means of

10  computer-aided transcription, and that the

11  foregoing represents a true and correct

12  transcript of the testimony given by said



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TERRANCE LONG and BARRY BARR, | } } } | |
| Plaintiffs, | } } | CASE NO: CA NO.: 2:07 CV 881-WKW |
| v. | } } } | |
| ARONOV REALTY MANAGEMENT, INC. AMY CLARK KNUDSEN, AND MEIYING FORNEY, | } } } } } | |
| Defendants. | } | |

**DEFENDANT ARONOV REALTY MANAGEMENT, INC.'S
CONFLICT DISCLOSURE STATEMENT**

COMES NOW Aronov Realty Management, Inc., Defendant in the above-referenced matter, and

in accordance with the Order of this Court, makes the following disclosure concerning parent companies,

Subsidiary, partners, limited liability entity members and managers, trustees (but not trust beneficiaries),

affiliates, or similar entities reportable under the provisions of the Middle District of Alabama's General

Order No. 3047:

The following entities and their relationship to the party are hereby reported as follows:

| ARONOV REALTY MANAGEMENT, INC. | |
|---|---|
| *Unless otherwise indicated, the address for Reportable Entity is:* P.O. Box 23500 Montgomery, AL 36123 | |
| **Reportable Entity** | **Relationship to Party** |
| Aronov Condo Management, Inc. | Wholly Owned Subsidiary |
| Aronov Commercial Capital, Inc. | Wholly Owned Subsidiary |
| Aronov Homes, Inc. | Wholly Owned Subsidiary |
| Aronov Home Rentals, Inc. | Wholly Owned Subsidiary |
| Aronov Insurance, Inc. ("AII") | Wholly Owned Subsidiary |
| Aronov Realty Brokerage, Inc. ("ARBI") | Wholly Owned Subsidiary |
| Aronov Residential Rental Properties, Inc. | Wholly Owned Subsidiary |
| Aronov Resort Management, Inc. | Wholly Owned Subsidiary |
| Atlanta Highway Mini Storage Management, Inc. | Wholly Owned Subsidiary |
| Cordova General, Inc. | Wholly Owned Subsidiary |

| | |
|---|---|
| CP Management, Inc. | Wholly Owned Subsidiary |
| Dogwood Promenade Management, Inc. | Wholly Owned Subsidiary |
| Dothan Motel Management, Inc. | Wholly Owned Subsidiary |
| Eastcrest General, Inc. | Wholly Owned Subsidiary |
| Eastdale Square Management, Inc. | Wholly Owned Subsidiary |
| Enterprise Center Management, Inc. | Wholly Owned Subsidiary |
| Fairlane Management, Inc. | Wholly Owned Subsidiary |
| Foxcroft General, Inc. | Wholly Owned Subsidiary |
| Gala Plaza Management, Inc. | Wholly Owned Subsidiary |
| Gulf West Management, Inc. | Wholly Owned Subsidiary |
| Gunter Park Management, Inc. | Wholly Owned Subsidiary |
| Hot Springs Management, Inc. | Wholly Owned Subsidiary |
| LLC Management, Inc. | Wholly Owned Subsidiary |
| Maison Bocage Management, Inc. | Wholly Owned Subsidiary |
| Prattville Mini Storage Management, Inc. | Wholly Owned Subsidiary |
| SC Management, Inc. | Wholly Owned Subsidiary |
| Southeast LLC Management, Inc. | Wholly Owned Subsidiary |
| Thorington Road Management, Inc. | Wholly Owned Subsidiary |
| Trussville Management, Inc. | Wholly Owned Subsidiary |
| Union Street Management, Inc. | Wholly Owned Subsidiary |
| West Dothan Mini Storage Management, Inc. | Wholly Owned Subsidiary |
| Windsor Hill Management, Inc. | Wholly Owned Subsidiary |
| Wiregrass Management, Inc. | Wholly Owned Subsidiary |
| Aronov Realty Company, Inc. | Affiliate |
| Aronov Capital, Inc. | Affiliate |
| Aronov Centre, Inc. | Affiliate |
| Aronov Land Co., Inc. | Affiliate |
| Aronov-Hot Springs, Inc. | Affiliate |
| ARC Fairfield, Inc. | Affiliate |
| ARC Retail, Inc. | Affiliate |
| ARC-Union Street, Inc. | Affiliate |
| ARC Vaughn Lakes, Inc. | Affiliate |
| Crescent Center, LLC | Affiliate |
| Dadeville Property, LLC | Affiliate |
| Guaranteed Homes, Inc. | Affiliate |
| Gunter Park Developers, Inc. | Affiliate |
| Hamilton Square Shopping Center | Affiliate |
| Hot Springs SPE, Inc. | Affiliate |
| Huntsville Community Builders, Inc. | Affiliate |
| Huntsville Store Company, Inc. | Affiliate |
| Jackson Community Builders, Inc. | Affiliate |
| Jefferson Woods, Inc. | Affiliate |

| | |
|---|---|
| Selma Community Builders, Inc. | Affiliate |
| Talladega Community Builders, Inc. | Affiliate |
| Union Street SPE, Inc. | Affiliate |
| Vaughn Lakes General, Inc. | Affiliate |
| Windsor Hill, LLC | Affiliate |
| Wiregrass SPE, Inc. | Affiliate |
| Zelda Place, Inc. | Affiliate |
| Alex City Shopping Center, L.L.C.<br><br>Aronov Realty Company, Inc., Member<br>SC Management, Inc., Manager | Affiliate |
| Aronov-Ozark (Ozark Shopping Center) | Affiliate |
| Belleview Outparcel Associates | Affiliate |
| Carmichael Office, L.L.C.<br><br>Aronov Realty Company, Inc., Member<br>Aronov Realty Properties, Inc., Member<br>Ryan Family Enterprises, Ltd., Member<br>*285 Kershaw Industrial Blvd, Montgomery, AL 36117*<br>Aronov Realty Management, Inc., Member | Affiliate |
| Colbert Community Builders, Inc. | Affiliate |
| Cordova Collection, Ltd.<br><br>Cordova General, Inc., General Partner | Affiliate |
| Dothan Motel, L.L.C.<br><br>Aronov Realty Company, Inc., Member<br>Aronov Realty Properties, Inc, Member<br>HID, II, Member<br>*P.O. Box 5566, Dothan, AL 36302*<br>Dothan Motel Management, Inc. & HIDS, LLC,<br>Managers<br>*P.O. Box 5566, Dothan, AL 36302* | Affiliate |
| Enterprise Shopping Center | Affiliate |
| Fairfield Partners, Ltd.<br><br>ARC Fairfield, Inc., General Partner<br>BB&W, LLC, General Partner<br>*300 Office Parker Drive, Suite 108*<br>*Birmingham, AL 35223* | Affiliate |
| Fieldcrest I Apartments, L.L.C.<br><br>Aronov Realty Company, Inc. (Member)<br>Larry G. Blumberg, Member<br>*P.O. Box 5566, Dothan, AL 36302* | |

3

| | |
|---|---|
| Richard H. Blumberg, Member<br>*P.O. Box 5566, Dothan, AL 36302*<br>Helen F. Lifland, Member<br>*P.O. Box 5566, Dothan, AL 36302*<br>Fieldcrest Management, Inc., Manager<br>Fieldcrest Blumberg Manager, LLC, Manager<br>*P.O. Box 5566, Dothan, AL 36302* | Affiliate |
| Fieldcrest II Apartments, L.L.C.<br><br>Jake F. Aronov, Member<br>Owen W. Aronov, Member<br>Aronov Holdings, I, Ltd., Member<br>Aronov Realty Company, Inc., Member<br>Larry G. Blumberg, Member<br>*P.O. Box 5566, Dothan, AL 36302*<br>Richard H. Blumberg, Member<br>*P.O. Box 5566, Dothan, AL 36302*<br>Helen B. Blumberg, Member<br>*P.O. Box 5566, Dothan, AL 36302*<br>Herbert M. Scheur, Jr., Member<br>*1342 Carmichael Way, Montgomery, AL 36106*<br>John E. Ives, Member<br>*8241 Old Federal Road, Montgomery, AL 36117*<br>Fieldcrest Management, Inc., Manager | Affiliate |
| Foxcroft Partners, Limited Partnership<br><br>Foxcroft General, Inc., General Partner | Affiliate |
| Gala Plaza, L.L.C.<br><br>Aronov Realty Company, Inc., Member<br>Frank M. Johnston, Member<br>*1821 Pine Needle Road, Montgomery, AL 36106*<br>John Beisel, Member<br>*P.O. Box 20426, St. Simons Island, GA 31522*<br>Gala Plaza Management, Inc., Member | Affiliate |
| Hillwood Estates, ABG | Affiliate |
| Satterfield Plaza Shopping Center | Affiliate |
| Southview Square, L.L.C. | Affiliate |
| Tillman's Corner Partners, Ltd. | Affiliate |
| Vaughn Lakes Associates, Ltd.<br><br>Vaughn Lakes General, Inc., General Partner | Affiliate |
| Wiregrass Plaza, LLC<br><br>Aronov Realty Company, Inc., Member<br>Wiregrass SPE, Inc., Member<br>Frank M. Johnston, Member<br>*1821 Pine Needle Road, Montgomery, AL 361016* | Affiliate |

4

| | |
|---|---|
| Wiregrass Management, Inc., Member | |
| Valley Partners, Ltd.<br><br>Jake F. Aronov, General Partner<br>Owen W. Aronov, General Partner<br>Robert Lamar, General Partner<br>*753 Felder Avenue, Montgomery, AL 36106*<br>Aronov Holdings I., Ltd., General Partner | Affiliate |
| Zelda Place Partners, Ltd.<br><br>Zelda Place, Inc., General Partner | Affiliate |
| Aronov Land Co., Inc. | Affiliate |
| Glynwood, LLC<br><br>Aronov Land Co., Inc., Member<br>Guaranteed Homes, Inc., Member<br>LLC Management, Inc., Manager | Affiliate |
| Macol Corporation | Affiliate |
| Thorington Road Properties, LLC<br><br>Aronov Land Co., Inc., Member<br>Jake F. Aronov, Member<br>Owen W. Aronov, Member<br>Thorington Road Management, Inc., Manager | Affiliate |
| Aronov Realty Properties, Inc., | Affiliate |
| Carmichael Office, LLC | Affiliate |
| Satterfield Plaza Shopping Center | Affiliate |
| Southview Square, LLC<br><br>Aronov Realty Company, Inc., Member<br>Aronov Realty Properties, Inc., Member<br>Larry G. Blumberg, Member<br>*P.O. Box 5566, Dothan, AL 36302*<br>Richard H. Blumberg, Member<br>*P.O. Box 5566, Dothan, AL 36302*<br>Helen B. Lifland, Member<br>*P.O. Box 5566, Dothan, AL 36302*<br>LLC Management, Inc., Member<br>Larry Blumberg, Manager<br>*P.O. Box 5566, Dothan, AL 36302* | Affiliate |
| Tillman's Corner Partners, Limited Partners<br><br>Aronov Realty Company, Inc., General Partner<br>Frank M. Johnston<br>*1821 Pine Needle Road, Montgomery, AL 36106* | Affiliate |
| Aronov Professional Career School, Inc. | Wholly Owned Subsidiary of ARBI |
| Seachase Real Estate, Inc. | Wholly Owned Subsidiary of ARBI |

| Alabama Insurance Alliance, Inc. | Wholly Owned Subsidiary of AII |
| --- | --- |

Respectfully submitted,


/s/Robert D. Segall
Robert D. Segall (SEG003)
Attorney for Defendant
Aronov Realty Management Inc.


OF COUNSEL:

COPELAND, FRANCO, SCREWS & GILL PA
444 South Perry Street
P.O. Box 347
Montgomery, AL 36101-0347
(334) 834-1180
(334) 834-3172 - Fax
segall@copelandfranco.com

6

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Michael Quinn, Esq.
Kevin W. Jent, Esq.
Wiggins, Childs, Quinn & Pantazis, LLC
The Kress Building
301 19th Street North
Birmingham, AL  35203
mquinn@wcqp.com
kjent@wcqp.com

N. Gunter Guy, Jr., Esq.
Ball, Ball, Mathews & Novak P.A.
Post Office Box 2148
Montgomery, AL  36102-2148
gguy@ball-ball.com

/s/Robert D. Segall
OF COUNSEL



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| TERRENCE LONG and | ) | |
| BARRY BARR, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | CIVIL ACTION NO.: |
| | ) | 2:07-cv-00881-WKW-WC |
| ARONOV REALTY MANAGEMENT, | ) | JURY DEMAND |
| INC., AMY CLARK KNUDSEN, MEIYING | ) | |
| FORNEY, and ARONOV REALTY | ) | |
| BROKERAGE, INC., | ) | |
| | ) | |
| Defendants. | ) | |

# AMENDED COMPLAINT

## I. JURISDICTION

1.  This is an action for legal and equitable relief to redress discrimination in housing and employment on the basis of race. This action arises under the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982.

2.  The Court has jurisdiction of the subject of this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(4), 2201, & 2202. Jurisdiction over plaintiffs' claims based on Alabama law exist under the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367.

## II.  PARTIES

3.  Plaintiff, Terrence Long (hereinafter referred to as "Long"), is an African-American citizen of the United States of America and is over the age of nineteen years. Plaintiff resides in Montgomery,

1

Alabama, which is in this judicial district and division.

4. Plaintiff, Barry Barr (hereinafter referred to as "Barr"), is a Caucasian citizen of the United States of America and is over the age of nineteen years. Barr resides in Montgomery, Alabama, which is in this judicial district and division.

5. Defendant, Aronov Realty Management, Inc., is a residential and commercial real estate company based in Montgomery, Alabama, and does business in this judicial district and division.

6. Defendant, Aronov Realty Brokerage, Inc. is a residential and commercial real estate company based in Montgomery, Alabama, and does business in this judicial district and division. Aronov Realty Brokerage, Inc. is a wholly owned subsidiary of Aronov Realty Management, Inc..

7. Defendant, Amy Clark Knudsen (hereinafter referred to as "Knudson"), is a residential and commercial real estate agent who is based in Montgomery, Alabama, and who does business in this judicial district and division. Knudsen is employed by defendants Aronov Realty Management and Aronov Realty Brokerage as a Leasing and Sales Specialist in the Commercial Division. At all times relevant to this Complaint, Knudsen was acting in the line and scope of her employment with Aronov and as leasing agent for the property owned by defendant Meiying Forney.

8. Defendant, Meiying Forney (hereinafter referred to as "Forney"), is an individual who is believed to be a resident of California. Forney is the owner of the property known as the "Lecroy Shopping Village" located at 3600 Debby Drive in Montgomery, Alabama and does business in this judicial district and division.

### III. FACTUAL ALLEGATIONS

9. Plaintiff Long, is an African-American male and is a former major league baseball player.

2

10. Plaintiff Barr, is a Caucasian male and is the former owner of the Celebrations nightclub in Montgomery. Celebrations clientele was predominantly African-American.

11. In April 2007, Long approached Barr concerning his interest in opening a sports bar in Montgomery, Alabama, that would cater primarily to the African-American community. Long asked Barr to be his partner in this venture and to work on finding a location for the business.

12. In May 2007, Barr learned that the Pure Country nightclub had closed business and that its location, in the Lecroy Shopping village, was for lease.

13. In May 2007, Barr set up a meeting with defendant Knudsen, a Leasing and Sales Specialist with the Aronov companies and the leasing agent for Lecroy Shopping Village's Pure Country location. On or about May 10, 2007, Barr and Knudsen met at the Lecroy Shopping Village at 3600 Debby Drive to view the former Pure Country location. The Lecroy Shopping Village is owned by Meiying Forney.

14. During their meeting, Knudsen was very concerned with the type of business that Barr was attempting to place in the shopping center. Barr told Knudsen that Long wanted to put a sports bar in the location and told her that they had looked at other properties in Montgomery.

15. Knudsen brought up the fact that they had great tenants at Lecroy and had no problems. She also stated that they did not want the same type of problems that existed at the Celebrations nightclub.

16. Knudsen repeatedly emphasized the fact that another "Celebrations" type nightclub was not wanted at the Lecroy Shopping Village and stated that they did not want a black club at that location because of problems in the parking lot.

17. Barr then told Knudsen that he was the former owner of Celebrations. Knudsen appeared shocked and uncomfortable upon hearing this information.

3

18. The Pure Country property was not in good shape when Barr viewed it, and Knudsen informed him that the owner was unwilling to put any money into the building, so all improvements would have to be made by the tenants.

19. At the close of that meeting Barr told Knudsen that they would probably make an offer on the Friday's building.

20. The offer on the Friday's building was turned down. The asking price was $550,000.00.

21. Barr discovered that the Lecroy Shopping Village was for sale and approached Knudsen with a one million dollar offer to purchase the shopping center. This offered was turned down with no counteroffer.

22. In the first week of June 2007, Barr called Knudsen and informed her that he and Long were still interested in the Pure Country location and that they wanted to do something immediately. Barr asked Knudsen if Long could look at the inside of the property.

23. Knudsen stated that she could not let them inside the property because it was tied up in a bankruptcy.

24. Barr then asked Knudsen if they would write a lease for the asking amount. Knudsen replied that there was already a lease pending and that they were in the process of working out the details on that lease. Knudsen would not even write a back up lease for the property.

25. The week after Barr's conversation with Knudsen, Mark Cranage (hereinafter referred to as "Cranage"), the owner of the Woodmere Tavern in Montgomery, contacted Knudsen and set up a time to inspect the Pure Country location. Cranage, who had previously owned a country-western bar similar to Pure Country, told Knudsen who he was. Knudsen stated that she had been in Cranage's previous club

4

and the Woodmere Tavern and was familiar with the format used at both clubs.

26. Knudsen told Cranage that she wanted him to see the property as soon as possible and that she would arrange it through the attorney who was handling the bankruptcy. Cranage inquired if there was anyone else looking at the property and Knudsen responded that other people were looking at the property, but they were not the kind of people they wanted in that location. Knudsen told Cranage that he was exactly what they wanted and they needed to move on it as quickly as possible. Knudsen repeatedly told Cranage that she would move him to the front of the list because he was the type they wanted at this location.

27. Upon Knudsen's request, Cranage then called the bankruptcy attorney, Don Little, and set up a time to view the Pure Country location. Little represents the owner of the Lecroy Shopping Village, Meiying Forney. On June 13th, Cranage met with Little and toured the Pure Country location.

28. Several times during this tour, Little made comments about the type of tenant that was wanted in the location. Little also stated that there was another party interested in the property, even after they had inflated the price to discourage interest. Cranage was promised a lease by the next Monday.

29. The day after Cranage toured with Little, Barr contacted Knudsen and once again asked if they could tour the building. She stated that we could not. Barr also asked about a back up lease in case the lease that they had been previously working on fell through and was told that he could not.

30. To date, Barr and Long have not been allowed to lease or purchase any property affiliated with the Lecroy Shopping Village at 3600 Debby Drive in Montgomery.

## IV. COUNT ONE - 42 U.S.C. § 1981

31. Plaintiffs adopt and re-allege paragraphs 1-30, as if fully set forth herein.

5

32.  At all times referenced above, defendant Knudsen was acting within the line and scope of her duties as an agent of the defendants Aronov Realty, Aronov Brokerage and Forney.

33.  At all times reference above, Little was acting within the line and scope of his duties as an agent of the defendant Forney.

34.  The failure to lease or sale the property as described above was based upon the plaintiff Long's race, the plaintiff Barr's affiliation with Long, and both of the plaintiffs' affiliation with African-Americans.

35.  The conduct of the defendants violated the plaintiffs' rights guaranteed by the Civil Rights Act of 1866, 42 U.S.C. §1981, to make and enforce contracts without regard to race.

## COUNT TWO - SECTION 1982

36.  Plaintiffs adopt and re-allege paragraphs 1-35, as if fully set forth herein.

37.  At all times referenced above, defendant Knudsen was acting within the line and scope of her duties as an agent of the defendants Aronov Realty, Aronov Brokerage and Forney.

38.  At all times reference above, Little was acting within the line and scope of his duties as an agent of the defendant Forney.

39.  The failure to lease or sale the property as described above was based upon the plaintiff Long's race, the plaintiff Barr's affiliation with Long, and both of the plaintiffs' affiliation with African-Americans.

40.  The above-described conduct of the defendant violated Plaintiffs' rights guaranteed by the Civil Rights Act of 1866, 42 U.S.C. §1982, to purchase, lease and to hold real and personal property without regard to race.

6

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that the Court will grant them the following relief:

A.  Issue a declaratory judgment declaring that the wrongs complained of herein violate the rights of Plaintiffs guaranteed by the Civil Rights Act of 1866, 42 U.S.C. §§ 1981 and 1982.

B.  Enter a permanent injunction or other injunctive relief enjoining Defendants and their brokers, agents, assistants, estate, successors, employees, assigns, and those acting in concert or cooperation with them from maintaining or continuing any customs, policies, patterns, practices, or actions which operate to discriminate on the basis of race or color.

C.  Enter a permanent injunction or other injunctive relief enjoining the defendants to take such other and affirmative steps to insure that all of the provisions of the applicable anti-discrimination laws are and will be complied with and that the effects of past and unlawful discrimination by defendants are eradicated.

D.  Award Plaintiffs compensatory and punitive damages, including pre-judgment interest.

E.  Retain jurisdiction of this action for a sufficient time to ensure full compliance with the remedial decree requested herein.

F.  Award Plaintiffs their costs incurred in this case, together with reasonable attorneys' fees and pre-judgment interest, pursuant to 42 U.S.C. §1 1988 and 3613(c)(2).

G.  Grant such additional and further relief as the court may deem just and equitable under the circumstances.

### **PLAINTIFF DEMANDS A TRIAL BY A STRUCK JURY**

7

Respectfully submitted,

/s/Kevin W. Jent
C. Michael Quinn
Kevin W. Jent
Attorneys for Plaintiffs

**OF COUNSEL:**

**WIGGINS, CHILDS, QUINN
& PANTAZIS, LLC**
The Kress Building
301 19th Street North
Birmingham, AL 35203
205/314-0500

**Defendants' Addresses:**

Aronov Realty Management, Inc.
3500 Eastern Blvd.
Montgomery, AL 36116-1781

Aronov Realty Brokerage, Inc.
3500 Eastern Blvd.
Montgomery, AL 36116-1781

Amy Clark Knudsen
3500 Eastern Blvd.
Montgomery, AL 36116-1781

Meiying Forney
2233 Paragon Drive
San Jose, CA 95131

## CERTIFICATE OF SERVICE

I do hereby certify that I have filed the above and foregoing today, June 26th, 2008, by CM/ECF, with copies being served on:

Charles A. Stewart, III
Quindal C. Evans
Bradley, Arant, Rose & White, LLP
401 Adams Ave, Suite 780
Montgomery, Alabama 36104

N. Gunter Guy, Jr.
BALL, BALL, MATTHEWS & NOVAK, P.A.
P. O. Box 2148
Montgomery, Alabama 36102-2148


/s/ Kevin W. Jent
OF COUNSEL