## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **TERRENCE LONG & BARRY BARR,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **V.** | ) | **Civil Action No.:** |
| | ) | **2:07-CV-00881-WKW-WC** |
| **ARONOV REALTY MANAGEMENT,** | ) | |
| **INC., ARONOV REALTY BROKERAGE,** | ) | |
| **IMC., AMY CLARK KNUDSEN, &** | ) | |
| **MEIYING FORNEY,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### BRIEF IN SUPPORT OF SECOND MOTION FOR SUMMARY
### JUDGMENT BY DEFENDANT ARONOV REALTY MANAGEMENT, INC.

Defendant **Aronov Realty Management, Inc.** states as follows in support of summary judgment.

### INTRODUCTION

Plaintiffs Terrence Long and Barry Barr have sued Aronov Realty Management Inc. ("Aronov Management"), Aronov Realty Brokerage, Inc. ("Aronov Brokerage"),[1] Amy Clark Knudsen ("Knudsen"), and Meiying Forney ("Forney") for racial discrimination under 42 U.S.C. §§ 1981 and 1982. Aronov Management and Knudsen have previously filed a joint motion for summary judgment addressing whether Plaintiffs have presented a case of discrimination.[2] When that Motion was filed, Aronov Brokerage was not yet a party to this suit, and a Renewed Motion to Amend to add Aronov Brokerage was pending before the Court. For these reasons,

---

[1] Aronov Brokerage was added as a Defendant on July 16, 2008. *See* Am. Compl. ¶ 6. Knudsen worked for Aronov Management before she began working for Aronov Brokerage in August 2006. (Knudsen Dep. at 29:23—30:4.) For purposes of this brief, any reference to "Aronov" will include either or both of these Aronov entities.

[2] Aronov Management adopts all facts and exhibits set forth in its previous Motion for Summary Judgment. Exhibits A-H of its Motion for Summary Judgment are included as exhibits to this Motion and are attached hereto. In order to avoid duplication, Aronov Management will not repeat those facts again here, but it will provide additional facts relevant to this Motion.

Aronov Management did not raise the issue of whether it could be held liable as Knudsen's employer during its first summary judgment motion. Aronov Management did, however, seek leave to file a motion on this issue in the event that Plaintiffs' Renewed Motion to Amend the Complaint was granted. Pursuant to this Court's July 9 Order, Aronov Brokerage and Aronov Management were given an extension to file dispositive motions. Aronov Management now brings this Second Motion for Summary Judgment in order to discuss its liability as an alleged employer of Knudsen.

Plaintiffs claim that Knudsen, a real estate broker who works for Aronov Brokerage, made a racially discriminatory remark to Barr when showing him property at LeCroy Village Shopping Center ("LeCroy"), which is owned by Forney.[3] Plaintiffs claim that Aronov Management should be liable for this alleged statement because Knudsen was using an Aronov Management business card at the time she showed Barr the property.[4] (Renewed Mot. To Amend Compl. to Add Party ¶ 3.) They also allege that Aronov Management and Aronov Brokerage are intertwined and related. *Id.* ¶ 3-4. However, the undisputed facts show that Knudsen was not an authorized agent of Aronov Management at the time of the alleged statement and that Aronov Management and Aronov Brokerage are separate corporate entities. Though Aronov Brokerage is a wholly-owned subsidiary of Aronov Management, the two companies are separate corporations. As such, they cannot be considered a single or joint employer. The undisputed facts also establish that Aronov Management was not in control of Knudsen and did not employ Knudsen. Given this lack of control, Aronov Management cannot be liable for her actions.

---

[3] Defendants continue to deny that Knudsen made this statement, but for the purpose of summary judgment, Aronov Management must assume that it is true.

[4] Knudsen has testified that she does not remember what business card she was using, and for the purpose of summary judgment, Aronov Management must assume that Plaintiffs' assertion is true.

For these reasons, as further explained below, this Defendant is entitled to summary judgment on all of the Plaintiffs' claims against it.

**MATERIAL UNDISPUTED FACTS**

**I.    The Relevant Aronov Companies**

Aronov Management is in the business of buying, selling, developing, and leasing real property.  It manages, develops, and leases "a portfolio of properties[:] office, industrial, retail, multi-family."  (Harris Dep. 11:1-5, 14:4-13.)  Aronov Brokerage is a wholly-owned subsidiary of Aronov Management.  (Terry Decl. ¶ 3.)  It "leases and sells commercial real estate in the commercial division."  (Harris Dep. 13:11-13.)  As a part of its commercial division, it is allowed to lease and sell the Aronov Management portfolio properties.  (Harris Dep. 13:18-22.) It also brokers and sells residential real estate.  (Harris Dep. 13:16-17.)  Aronov Brokerage does not manage property.  (Harris Dep. 56:17-18.)

Aronov Management and Aronov Brokerage share some, but not nearly all, resources. They maintain some shared office space.  (Terry Decl. ¶ 4.)  All Aronov companies use one 401K, which is under an Aronov Management savings and retirement plan.[5]  (Terry Decl. ¶ 5.) Both Aronov entities use the same human resources, which is a division of Aronov Management. (Terry Decl. ¶ 6.)  All other related Aronov entities, including Aronov Brokerage, must pay Aronov Management in order to use its human resources department.  (Terry Decl. ¶ 6.)  This cost is annually assessed per capita and charged monthly by Aronov Management.  (Terry Decl. ¶ 6.)  Both Aronov entities outsource their payroll to a third-party payroll processor; it is funded by Aronov Management.  (Terry Decl. ¶ 7.)  Other Aronov entities then reimburse Aronov Management for payroll expenses.  (Terry Decl. ¶ 7.)  The different Aronov entities maintain

---

[5] *See, e.g.*, 6 *Mertens Law of Federal Income Taxation* § 25B:164 (Martin M. Weinstein, ed., 2008) (discussing "controlled groups" and 401(k) plans).

separate tax ID numbers, and employees receive W-2s from the Aronov entity that employs them.    (Terry Decl. ¶ 8-9.)    Aronov Management and Aronov Brokerage have separate stationery.  (Knudsen Decl. ¶ 3.)  They have different employee policies, and reimbursements are separated by company.  (Knudsen Decl. ¶ 4.)  The Aronov Management and Aronov Brokerage employees conduct meetings separately.  (Knudsen Decl. ¶ 5.)

They also share some, but not nearly all, officers and employees.    Aronov  Management has eight officers, three of whom are not officers of Aronov Brokerage.  Aronov Brokerage has seven officers, two of whom are not officers of Aronov Management.  (Terry Decl. ¶ 11.)  Jake Aronov, Owen Aronov, Jennifer Autrey, Michael Terry, and Scott Harris ("Harris") are officers of both companies.  (Harris Dep. 21:2-5; Terry Decl. ¶ 11.)  Harris is Aronov Brokerage's Senior Vice President.    (Harris Dep. 5:9-12.)    He oversees profitability and personnel for Aronov Management's  and  Aronov  Brokerage's  brokerage,  commercial,  and  industrial  divisions.[6] (Harris Dep. 6:23-7:4.)    He  is  the  qualifying  broker  for  Aronov  Management  and  Aronov Brokerage, and he also leases and sells property.  (Harris Dep. 7:6-11.)    Before he began receiving his salary through direct deposit, he received separate checks from Aronov Brokerage and Aronov Management.  (Harris Dep. 57:17-23.)

II.    **Knudsen's Employment with Aronov Management and Aronov Brokerage**

In 2003, Knudsen was originally hired by Aronov Management as a commercial leasing agent.  (Knudsen Dep. 29:14-16.)  While at Aronov Management, Knudsen was responsible for marketing and leasing office and retail space in the Aronov Management portfolio.  (Knudsen Dep. 26:4-7, 30:20-21, 32:1-19.)  In fact, Knudsen could not lease properties outside of the Aronov portfolio properties without special permission.  (Knudsen Decl. ¶ 6.)  Knudsen believes that her paycheck before August 2006 came from Aronov Management.  (Knudsen Dep. 37:2-

---

[6] Harris does not, however, oversee the residential division of Aronov Brokerage.  (Harris Dep. 22:9-18.)

10.)  While at Aronov Management, Knudsen was supervised by Harris.  (Knudsen Dep. 94:6-8.) She was also issued "Aronov Management" business cards.  (Knudsen Dep. 90:9—93:6; Harris Dep. ex. 1.)

Knudsen became an employee of Aronov Brokerage in August 2006.  (Knudsen Dep. 29:23—30:10.)  Her change in employer also constituted a broadening of responsibility.  *See* Harris Dep. 45:1-8, 51:16-22.  Not only could she lease Aronov portfolio properties, Knudsen could focus on sales or leases for any commercial property.  (Harris Dep. 45:5-8.)  Harris continued to be her supervisor.  (Harris Dep. 46:1-15.)  As an employee of Aronov Brokerage, Knudsen now receives her salary and commission from Aronov Brokerage.  (Harris Dep. 9:22-10:4.)  Also, since August 2006, her real estate license has been under Aronov Brokerage. (Knudsen Dep. 28:12-23 & Ex. 1.)  Though she was issued "Aronov Brokerage" business cards, she testified that she may have occasionally used "Aronov Management" business cards after August 2006 if she accidentally grabbed the wrong card from her car.  (Knudsen Dep. 90:9— 93:6 & ex. 3; Harris Dep. ex. 1.)  While she was eligible for continuing education and travel reimbursements as an employee of Aronov Management, Knudsen is not eligible for these types of reimbursements as an employee of Aronov Brokerage.  (Knudsen Decl. ¶ 4.)  Similarly, while Aronov Management supplied her with a mobile phone, a mobile phone is not provided to her as an employee of Aronov Brokerage.  (Knudsen Decl. ¶ 4.)  Finally, when she was an Aronov Management employee, she was not authorized to act for or on behalf of Aronov Brokerage; now that she is an Aronov Brokerage employee, she is not authorized to act for or on behalf of Aronov Management.  (Knudsen Decl. ¶ 7.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the Affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); FED. R. EVID. 56. The moving party must initially advance a showing that "there are no genuine issues of material fact that should be decided at trial." *Weston Group Nurseries, Inc. v. Ergas*, 167 F.3d 1354, 1361 (11th Cir. 1999). A claim should be dismissed when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Slagle v. ITT Hartford*, 102 F.3d 494, 497 (11th Cir. 1996) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The undisputed facts and relevant law in this case show that this Defendant is entitled to judgment as a matter of law on all of Plaintiffs' claims. Because it has carried its initial burden with the filing of its motion and brief, Plaintiffs may not rest on the mere allegations or denials in their pleadings. Plaintiffs, by declarations or as otherwise allowed by Rule 56, must establish a genuine issue of material fact, as determined by an examination of the substantive law. *Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir. 1995). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322. As established below, Plaintiffs cannot meet their burden with respect to their claims.

## ARGUMENT

Plaintiffs have brought suit against Knudsen's employer, Aronov Brokerage, and its parent, Aronov Management. However, as the parent company of Knudsen's employer, Aronov Management can only be liable for Knudsen's alleged actions if Plaintiffs can establish that

Aronov Brokerage and Aronov Management are essentially one employer or that Aronov Management was in an agency relationship with Knudsen. This Plaintiffs cannot do, and summary judgment should be granted in Aronov Management's favor.

## I.    Aronov Management and Aronov Brokerage are not joint employers

When discrimination occurs in a subsidiary corporation, the parent corporation can be held liable if it qualifies with the subsidiary as a "single employer." In order to hold the parent corporation liable as a single employer, the ownership and operations of the parent and the subsidiary must be highly integrated. *McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987) (quoting *Fike v. Gold Kist, Inc.*, 514 F. Supp. 722, 726 (N.D. Ala. 1981), *aff'd*, 664 F.2d 295 (11th Cir.1981)).[7] The Eleventh Circuit has adopted the NLRB's four-part test to determine whether multiple corporations can be treated as a single employer: "(1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *McKenzie*, 834 F.2d at 933.

In *McKenzie*, there was evidence that the same family owned and controlled both defendant-companies, personnel at each company was controlled by the same individual, books and records were maintained together for both entities, many employees overlapped, payroll checks for both entities were issued from the same office, all bills for the entities were paid by the same office, and the companies advertised jointly. Also, the plaintiff was simultaneously employed and paid by both defendant-companies. *McKenzie*, 834 F.2d at 933-34. Given these

---

[7] In many of the "single employer" cases, courts are actually looking at the jurisdictional requirement for Title VII cases, *i.e.*, whether the employees of the two companies can be aggregated in order to meet a Title VII jurisdictional threshold. However, this doctrine is not limited to jurisdictional inquires; it also applies in the context of liability. *See Thornton v. Mercantile Stores Co.*, 13 F. Supp. 2d 1282, 1291 (M.D. Ala. 1998). While the Eleventh Circuit has not expressly extended this "single employer" test to section 1981 and 1982 liability, many district courts have implicitly done so. *See, e.g., Harris v. N.Y. Times*, No. 90 Civ. 5235 (CSH), 1993 WL 42773, *12 (S.D.N.Y. Feb. 11, 1993) (applying employer rules set forth in *McKenzie*, among others, to 1981 and Title VII claims).

facts, the court determined that a genuine issue of material fact existed as to whether the two defendant-corporations were a single entity. *Id.*

The *McKenzie* opinion did not delineate which facts applied to which factors, but courts have since further explained these requirements. "In assessing whether corporate entities have interrelated operations, courts consider whether the businesses have 'combined accounting records, bank accounts, lines of credit, payroll preparation, switchboard, telephone numbers, or offices.'" *Hegre v. Alberto-Culver USA, Inc.*, 485 F. Supp. 2d 1367, 1374 (S.D. Ga. 2007) (citing *Clark v. St. Joseph's/Candler Health Sys., Inc.*, CV 405-119, 2006 WL 2228929, at *5 (S.D. Ga. Aug.3, 2006)). Though some functions may be shared, the key inquiry is whether there is combined control over the action that is alleged to have caused the discrimination. *See Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1244-45 (11th Cir.1998).

Assuming that the "single employer" doctrine applies to this 1981 and 1982 case, Plaintiffs have failed to present evidence from which one could determine that Aronov Management and Aronov Brokerage have interrelated operations. Though Aronov Brokerage is wholly owned by Aronov Management and they share some office space, officers, a 401K plan, and a few employees, they are not interrelated for liability purposes. They separately fund their payroll processor. Aronov Brokerage outsources its human resources to Aronov Management, and it is required to pay for this service. The companies have different personnel policies, purposes, stationery, and meetings. They maintain separate tax identification numbers. Unlike in *McKenzie*, Knudsen was never simultaneously employed by both Aronov Brokerage and Aronov Management. When she moved from Aronov Management to Aronov Brokerage, her job description changed; her business cards and stationery changed; her cell phone benefits changed; and her reimbursement benefits changed. Thus, given the degree to which Aronov

Brokerage and Aronov Management maintain separate payrolls, tax identification numbers, business purposes, and employee policies and benefits, Plaintiffs cannot establish that the companies maintain interrelated operations.

In *Hegre*, the Southern District of Georgia looked at whether a plaintiff's employer and another related corporation, which shared officers, some management functions, and some services, were interrelated for the purpose of family and medical leave liability. Despite some interrelatedness, only one of the companies controlled employees' pay, job descriptions, evaluations, and performance. That company also controlled whether employees were hired, fired, or disciplined. Therefore, the court held that the other related corporation was not an interrelated company because it could not control the day-to-day hiring and firing of the plaintiff's employer. *Hegre*, 485 F. Supp. 2d at 1375; *see also Thornton v. Mercantile Stores Co.*, 13 F. Supp. 2d at 1292 ("The second factor--whether there is centralized control of labor relations--is usually accorded greater weight than the others."). In essence, without evidence that the second corporation could control or be involved in the allegedly discriminatory conduct, a court should not find companies to be interrelated.

In two keys ways, Aronov Management also lacked the requisite control over Knudsen necessary for a finding of interrelatedness. First, Aronov Management did not control Knudsen's status as an employee. She was paid by Aronov Brokerage, and any reimbursements that she submitted went through Aronov Brokerage. Her real estate license was issued through Aronov Brokerage. She was supervised by Harris in his capacity as the qualifying broker for Aronov Brokerage. Though Aronov Management's human resources division handled Knudsen's personnel information, it was essentially as an independent contractor of Aronov Brokerage; it was billed to and controlled by Aronov Brokerage. Second, Aronov Management

was not in a position to control Knudsen's actions as a real estate agent.[8]  While employed at Aronov Brokerage, Knudsen was employed to lease any commercial real estate property.  She was not limited to handling those properties managed in the Aronov portfolio; she no longer needed to receive permission to lease or sell third-party properties, and she could sell and lease any Aronov portfolio or third-party property.  She was also not entitled to the more generous Aronov Management reimbursement and cell phone benefits.  Aronov Management did not control her commission; her compensation came directly from Aronov Brokerage.  Her real estate license—the very thing that allowed her to be a real estate agent—was written with Aronov Brokerage as the qualifying company.  In fact, as in *Hegre*, there is no evidence that Knudsen's real estate practice was subject to the control of Aronov Management after August 2006, and this Court should find that Aronov Management and Aronov Brokerage are not interrelated.

Given that the Aronov companies maintain separate operations and that Knudsen was employed and controlled only by Aronov Brokerage, Plaintiffs cannot meet the criteria for establishing that Aronov Management and Aronov Brokerage are a single employer.  Because the Aronov companies are not a single employer and because Aronov Management did not participate in the dispute at issue or employee Knudsen at any time during the dispute, summary judgment should be granted in favor of Aronov Management.

---

[8] The single employer cases arise when an employee seeks to hold a parent liable for discrimination by a subsidiary against an employee.  This case is slightly different because Plaintiffs seek to hold the parent liable for alleged discrimination by a subsidiary's employee against third parties.  To the extent that the purpose of the single employer doctrine is to determine whether a parent was interrelated enough to be liable for discrimination *as an employer*, the more relevant question in this context is whether Aronov Brokerage and Aronov Management are so interrelated that Aronov Management can be held liable for Knudsen's actions *as a real estate agent*.

## II.    Aronov Management cannot be liable for Knudsen's alleged discrimination

A real estate agent may, under some circumstances, be held liable for the discriminatory actions of its employees and real estate agents.  *See, e.g, Cent. Ala. Fair Hous. Ctr., Inc. v. Lowder Realty Co.*, 236 F.3d 629 (11th Cir. 2000).  However, Knudsen was not an employee-real estate agent of Aronov Management at the time of the alleged conduct.  Knudsen is not an agent under Alabama or federal case law.

Under Alabama law, "where the facts are undisputed, and if a departure from the employer's business is shown to have been of a marked and decided character, . . . the question [of whether a person was an agent of the principle] may be within the province of the court."  *Chamlee v. Johnson-Rast & Hays*, 579 So. 2d 580, 583 (Ala. 1990) (citations omitted).  An agent may have actual or apparently authority.  *Lawler Mobile Homes, Inc. v. Tarver*, 492 So. 2d 297, 304 (Ala. 1986) (citations omitted).  "'Express authority is actual authority conferred by the principal upon an agent and can only be given by written or spoken words or by other conduct by the principal which, reasonably interpreted, causes the agent to believe that the principal wishes him to act on his behalf.'"  *Merrell v. Joe Bullard Oldsmobile, Inc.*, 529 So. 2d 943 (Ala. 1988) (quoting and approving of jury instruction).

> Implied authority of an agent is authority to do whatever acts or use whatever means are reasonably necessary and proper to the accomplishment of the purposes for which the agency was created, so that in the conduct of his principal's business, an agent has implied authority to do that which the nature of the business would demand in its due and regular course.

*Id*.  It is undisputed that Knudsen could not act for or on behalf of Aronov Management when she showed Barr the property.  Therefore, she would not have possessed the actual authority to act on Aronov Management's behalf.  Similarly, because she could not act for Aronov

Management in any capacity, she could not have acted with implied authority; she simply had no reason or authority to act for Aronov Management.

Even in the absence of actual authority, an agent may possess apparent authority. "Apparent authority of an agent arises from the acts of the principal, either by omission or commission, and such authority is implied where the principal passively permits the agent to have the authority to act on his behalf." *Lawler Mobile Homes, Inc.*, 492 So. 2d at 304 (citations omitted). "[A]pparent authority must be based upon the conduct of the principal and not that of the agent." *Gray v. Great Am. Reserve Ins. Co.*, 495 So. 2d 602, 607 (Ala. 1986) (citing *Johnson v. Shenandoah Life Ins. Co.*, 291 Ala. 389, 281 So.2d 636 (1973)). People may not blindly trust an agent's statement regarding authority. *Gray*, 495 So.2d at 607.

In *Malmberg v. American Honda Motor Co.*, 644 So.2d 888, 891 (Ala.1994), the court examined whether signs, logos, literature, brochures and similar writings by the alleged principle could establish agency. The Alabama Supreme Court held that these writings could not establish apparent authority. *Id*. at 891. However, when these items were also combined with other factors—such as when the principle provides a warranty through the agent and the principle trains and instructs the agent—then there is a question of fact as to whether there is apparent authority of an agent to act for a principle. *Id*. Citing to *Malmberg*, the Eleventh Circuit held that use of a business card and stationery bearing the alleged principle's name is insufficient for finding apparent authority. *Gen. Am. Life Ins. Co. v. AmSouth Bank*, 100 F.3d 893 (11th Cir. 1996) ("The stationery and the business card, with [the alleged principal's] name and [the alleged agent's] identity as general agent, are the high water mark of this evidence. We think this evidence is not unlike the logos, signs, and literature in *Malmberg*, and is inadequate to support [defendant's] argument.").

Knudsen's alleged use of an "Aronov Management" business card is the only evidence that Plaintiffs can point to in support of their claim that Knudsen was an apparent agent of Aronov Management. Assuming, *arguendo*, that Knudsen provided Plaintiffs with her "Aronov Management" business card, this evidence is insufficient under *Malmberg* and *General American Life Insurance Company*; it simply cannot establish an agency relationship. Further, given that she was provided "Aronov Brokerage" cards, neither Aronov Management nor Aronov Brokerage can be said to have contributed to or condoned her use of the old "Aronov Management" business card. Her business card was given to her while she was an employee of Aronov Management. It is undisputed that when she became an employee of Aronov Brokerage, she was issued new business cards. There is no evidence that Aronov Management knew that Knudsen still had or allegedly used her old business cards. Simply put, Aronov Management should not be liable for Knudsen's independent and unknown alleged use of old business cards, especially since Aronov Brokerage had issues new cards to her.

Knudsen not only fails to qualify as an agent under Alabama's standards, but she also does not meet the test for agency set forth in federal case law. "In determining whether or not there is an employment relationship, the Eleventh Circuit instructs district courts to apply common-law principles of agency." *Kolczynski v. United Space Alliance, LLC*, No. 6:04CV716ORL-18KRS, 2005 WL 2291706, *3 (M.D. Fla. Sept. 20, 2005). "Under this test, the term 'employee' is 'construed in light of general common law concepts' and 'should take into account the economic realities of the situation,' 'viewed in light of the common law principles of agency and the right of the employer to control the employee.'" *See Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1234 (11th Cir.2004) (quoting *Cobb v. Sun Papers, Inc.*, 673 F.2d 337, 340-41 (11th Cir.1982)).

"'Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 392 (1982) (quoting Restatement (Second) of Agency §§ 1 (1958) (Restatement)). "At the core of agency is a 'fiduciary relation' arising from the '*consent* by one person to another that the other shall act on his behalf . . . .'" *Gen. Bldg. Contractors Ass'n, Inc.*, 458 U.S. at 393 (emphasis added) (quoting Restatement § 1). The employer's right to control the employee is also determinative. *Cobb*, 673 F.2d at 341; *see also Gen. Bldg. Contractors Ass'n, Inc.*, 458 U.S. at 393 ("Equally central to the master-servant relation is the master's control over or right to control the physical activities of the servant." (citations omitted)). A court should consider whether the employer maintained "the authority to hire, transfer, promote, discipline or discharge; the authority to establish work schedules or direct work assignments; [or] the obligation to pay or the duty to train the charging party." *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1345 (11th Cir.1999) (citation omitted).

In *Bahadirli v. Domino's Pizza*, 873 F. Supp. 1528 (M.D. Ala. 1995), the court decided that a corporate Domino's pizza chain could not be liable for the alleged discrimination of its franchisee, which was a separate corporation. The relevant test was whether the franchisee was an agent of Domino's, and specifically, the court looked at whether Domino's could control the franchisee. *Id.* at 1537. Because people who worked at the franchise store were employees of the franchisee, Domino's was not involved in the hiring process, and the franchise was operated by an independent contractor, Domino's could not be liable for its franchisee's actions.

Similarly in this case, Plaintiffs cannot present evidence that Aronov Management authorized Knudsen to act or that Aronov Management controls Knudsen. Knudsen is paid by

Aronov Brokerage, and she is subject to Aronov Brokerage's personnel rules, company policies, and benefits restrictions.  She attends Aronov Brokerage meetings and uses Aronov Brokerage stationery.  Unlike an employee of Aronov Management, she may lease and sell non-Aronov portfolio property without special permission.  As in *Domino's*, Aronov Management and Aronov Brokerage are different companies and one does not control the other.  Ultimately, there is no evidence that Knudsen is controlled or employed by Aronov Management.

There is simply no basis in fact for the Plaintiffs' claim that Knudsen was Aronov Management's agent during the events giving rise to this dispute.  Accordingly, Aronov Management is entitled to summary judgment on Plaintiffs' claims against it.

Respectfully submitted this the 23rd day of July, 2008.

s/ Quindal C. Evans
Charles A. Stewart III (STE067)
Quindal C. Evans (EVA040)
Bradley Arant Rose & White LLP
Alabama Center for Commerce
401 Adams Avenue, Suite 780
Montgomery, AL 36104
Telephone: (334) 956-7700
Facsimile: (334) 956-7701
E-mail:  cstewart@bradleyarant.com
Email: qevans@bradleyarant.com
**Attorneys for Defendant Aronov Realty Management, Inc.**

<u>CERTIFICATE OF SERVICE</u>

I certify that on July 23, 2008, I electronically filed this document with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Kevin W. Jent                           N. Gunter Guy
C. Michael Quinn                        Ball, Ball, Matthews & Novak, P.A.
Counsel for the Plaintiff               P.O. Box 2148
Wiggins, Childs, Quinn & Pantazis, LLC  Montgomery, AL 36102-2148
The Kress Building
301 19th Street North
Birmingham, AL 35203

and I hereby certify that I have mailed by United States Postal Service the document to the following non-CM/ECF participants: Not applicable.

s/ Quindal C. Evans
Of Counsel